# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Crim. No.  07-336 (JDB)** |
| | **:** | |
| **ERRICKSTON BENNETT,** | **:** | **Motions Hearing:  April 22, 2008** |
| | **:** | |
| **Defendant.** | **:** | |
| _____ | **:** | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION TO SUPPRESS

The United States, by and through its attorney, the United States Attorney for the District

of Columbia, respectfully opposes Defendant Bennett's Motion to Suppress.  In support of its

opposition, the Government relies on the following points and authorities, and such points and

authorities as may be cited at a hearing on the motion.

## FACTUAL BACKGROUND

On November 7, 2007, at approximately 2:35 p.m., Metropolitan Police Department (MPD)

Sergeant Timothy Cortright (Sgt. Cortright), who was assigned to the MPD Central Auto Theft Unit

(Auto Theft Unit), was working in plain clothes, in an unmarked vehicle, in the area of the 1100

block of Queen Street, N.E., in the District of Columbia.  While on assignment, Sgt. Cortright

observed an individual, later identified as Errickston Bennett, operating a red, two-door, 2007 Chevy

Monte Carlo (Monte Carlo or vehicle), Maryland Tag Number 6BDD02, on Mount Olivet Road,

N.E., in the District of Columbia.  At the time that Sgt. Cortright observed defendant Bennett

operating the vehicle, it was traveling at a high rate of speed.

While the vehicle was in view, Sgt. Cortright conducted a record check on the vehicle tag

number, and from the record check he learned that the vehicle had been reported stolen by Enterprise

Leasing Corporation (Enterprise), the lawful owner of the Monte Carlo.[1/]  At that point, Sgt. Cortright lost visual contact with the Monte Carlo; however MPD Detective Daniel J. Straub, who worked in the Auto Theft Unit, had personally taken Enterprise's stolen auto report, and had information about the possible location of the Monte Carlo.[2/]  Sgt. Cortright called Detective Straub and Detective Straub, provided Sgt. Cortright with defendant Bennett's name, address, and other relevant information regarding the Monte Carlo.

After receiving more information about the vehicle and its possible whereabouts from Detective Straub, Sgt. Cortright drove to the 100 block of Queen Street, N.E., in the District of Columbia,  which is an area known as the Trinidad neighborhood, and he observed the Monte Carlo parked at the corner of Queen Street.  Sgt. Cortright went to an alley, and stood in a place in the alley where he had an unobstructed view of the parked Monte Carlo.  Minutes later, Sgt. Cortright observed defendant Bennett approach the passenger side of the Monte Carlo, and apply pressure with his finger to an object in his hand.  At that time, the Monte Carlo's outside lights flashed.  Defendant Bennett opened the front passenger door of the vehicle, leaned into the vehicle toward the backseat,

_____

[1/]    Sgt. Cortright, along with the MPD Report Form 163, indicated that the vehicle was reported stolen in April 2007; however, the Enterprise Loss Control Administrator indicated that the vehicle was reported stolen on August 6, 2007.  This inconsistency was disclosed to defense counsel on March 6, 2008.

[2/]    According to Enterprise's loss control representatives, in January 2007, Errickston Bennett rented the Monte Carlo from Enterprise, through his insurance company, after Mr. Bennett's personal vehicle had been involved in an automobile accident.  Mr. Bennett kept the Monte Carlo for approximately two months through his insurance company, however, in late March 2007, the insurance company would no longer pay for the vehicle rental.  At that time, Mr. Bennett transferred the payments for the vehicle to his personal credit card.  In April 2007, Mr. Bennett reached his credit limit on the credit card used to secure payment for the vehicle, and Enterprise demanded its vehicle be returned.  According to Enterprise, their correspondence to Mr. Bennett went unanswered. From late April 2007, until November 7, 2007, Mr. Bennett had possession, custody and control of the Monte Carlo, without permission from Enterprise.

and then backed out of the vehicle. Defendant Bennett walked around to the driver's side of the vehicle, opened the driver's door, entered and sat in the driver's seat of the vehicle, and then he closed the driver's door. After a few minutes, defendant Bennett got out of the vehicle, closed the door, applied pressure with his finger to an object in his hand, and at that point, the outside lights of the vehicle flashed, and he walked down the street toward the alley where Sgt. Cortright was standing. At 2:55 p.m., approximately 20 minute after Sgt. Cortright first observed defendant Bennett driving the Monte Carlo, Sgt. Cortright apprehended defendant Bennett, and placed him under arrest for Unauthorized Use of a Vehicle, in violation of D.C. Code § 22-3215. Sgt. Cortright conducted a search incident to arrest of defendant Bennett's person, and located inside defendant Bennett's right front pant's pocket were vehicle keys with a tag bearing the Enterprise name and company logo. Sgt. Cortright asked defendant Bennett, "What are these keys to?" Defendant Bennett responded, "The red car up the street." Also recovered from defendant Bennett's person was $333 in U.S. Currency.

Another MPD officer located the Monte Carlo, and drove the vehicle to the MPD Fifth District impound lot. At the Fifth District impound facility, Sgt. Cortright searched the vehicle, and inside of the unlocked, but closed center console was: 1) a large clear plastic ziploc bag containing 24 very large tannish rocks, which field-tested positive for cocaine; 2) a plastic pill container which contained 104 small ziploc bags, each containing a tannish rock, a portion of which tested positive for cocaine; 3) a Canada Dry identification card with defendant Bennett's photo on it; 4) a HID Corporation Prox Card; and 5) a Solbiato clothing store receipt in the amount of $474.82. On the passenger side floorboard of the vehicle was a High Sierra backpack, which contained: 1) an operable, loaded Firestorm .45 caliber semi-automatic pistol with nine rounds of ammunition inside;

2) mail matter with defendant Bennett's name on it, including defendant Bennett's Equifax credit report, and defendant Bennett's child support enforcement paperwork and receipts; 3) a liquor box, which contained a plate, razor blades, several empty ziploc bags that matched the ziplocs in the pill container in the center console, two cigarette lighters, and a electronic scale; and 4) a cellular phone subscribed to defendant Bennett, and defendant Bennett's cellular phone bill. In the driver's side door pocket there was additional mail matter in the name of Erickston Bennett, including a June 8, 2007, notice letter from Enterprise demanding the return of the Monte Carlo. In the trunk of the vehicle was: 1) mail matter and other documents in defendant Bennett's name; and 2) tickets issued to defendant Bennett's personal vehicle. In the glove compartment of the vehicle was: 1) a registration certificate naming Enterprise Leasing Co. as the registered owner of the Monte Carlo; 2) an Enterprise rental agreement between Enterprise and Errickston Bennett; 3) consumer materials for the Monte Carlo; and 4) mail matter and other documents with defendant Bennett's name on it.

## ARGUMENT

Defendant Bennett now moves to suppress all of the tangible evidence seized in this case. Specifically, defendant Bennett argues that because the police failed to obtain a warrant prior to the search of defendant Bennett's person, the Monte Carlo he was operating, and the backpack inside of the Monte Carlo, they violated the Fourth Amendment, and therefore, the evidence seized should be suppressed (Defendant's Motion at 2, 3). These arguments are without merit and should be rejected.[3/]

---

[3/]    Defendant also asserts that the Government bears the burden of justifying the warrantless seizure of defendant Bennett (Defendant's Motion at 3). We agree, however; we believe we have met our burden.

I.      **Defendant Bennett Has Not Established His Standing to Assert a Fourth Amendment Challenge of the Monte Carlo and Its Contents**

The defendant must establish at the outset that he has standing to suppress the evidence seized.  "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."  Rakas v. Illinois, 439 U.S. 128, 130 n.1, 143 (1978) (defendant bears the burden of establishing that he personally possesses "a legitimate expectation of privacy" in the car).  In order to sustain this burden, the defendant must establish that he had a legitimate expectation of privacy in the area searched or a proprietary interest in the property seized.  United States v. Zabalaga, 834 F.2d 1062, 1065 (D.C. Cir. 1987) ("defendant bears the burden on a motion to suppress of establishing not only that the search was unlawful, but also that he had a legitimate expectation of privacy") (citing Rawlings v. Kentucky, 448 U.S. 98, 104 (1980)).  In this case, the record is devoid of any factual basis upon which this Court can find that defendant Bennett enjoyed a legitimate expectation of privacy in the stolen Monte Carlo.  Significantly, defendant never acknowledged, nor could he credibly acknowledge that he was the owner of the Monte Carlo.  United States v. Mangum, 321 U. S. App. D. C. 348, 354, 100 F.3d 164, 170 (1996)("courts have long held that, when a person voluntarily denies ownership of property in response to a police officer's question, he forfeits any reasonable expectation of privacy in [the property]; consequently, police may search it without a warrant."); Varner v. United States, 685 A.2d 396 (D.C. 1996) (non-owner driver of car did not have legitimate expectation of privacy in car)  Unless the defendant can show that his Fourth Amendment rights were violated by the seizure of evidence, he does not have

standing to object to the search of the vehicle, and cannot force the government to defend the legality of the police officers' actions here. United States v. Mitchell, 951 F.2d 1291, 1298-99 (D.C. Cir. 1991).

Moreover, because the Monte Carlo that defendant was driving was stolen, he had no legitimate expectation of privacy in it, and thus has no standing to contest the seizure of evidence from inside the vehicle.  United States v. Hensel, 672 F.2d 578 (6th Cir. 1982); United States v. Lanford, 838 F.2d 1351 (7th Cir. 1988).  Because defendant Bennett cannot meet his burden to show that he has standing to assert a Fourth Amendment claim regarding the Monte Carlo, the vehicle and its contents should not be suppressed.

## II.    The Search of Errickston Bennett's Person Was a Proper Search Incident to Arrest

It is well established that once police officers lawfully arrest a suspect, they may conduct a full search of his person.  Chimel v. California, 395 U.S. 752, 763 (1969); United States v. Wider, 951 F.2d 1283, 1286 (D.C. Cir. 1991).  In order to be lawful, an arrest must be supported by probable cause.  See United States v. Broadie, 452 F.3d 875, 881 (D.C. Cir. 2006) ("The arrest was valid . . . if the officer had probable cause to believe [the defendant] had committed any crime.").  In this case, Sgt. Cortright arrested Errickston Bennett based on probable cause to believe that he had committed the offense of Unauthorized Use of a Vehicle.  Sgt. Cortright received and confirmed reliable information that the vehicle, which defendant Bennett was observed operating, entering, and exiting with a alarmed key, was reported stolen by Enterprise prior to November 7, 2007.  Sgt. Cortright's information, not only came from a computer record check of the vehicle tags, but also from Detective Straub's personal knowledge that 1) the Monte Carlo had been reported stolen; and 2) defendant Bennett may have possession of that vehicle.  Thus, because Sgt. Cortright had probable cause to believe that defendant Bennett was operating the Monte Carlo without permission from

Enterprise, the rightful owner, the lawful arrest, and the subsequent search of defendant Bennett's person therefore was proper.

Accordingly, the car key and tag bearing the Enterprise name and logo, and the U.S. Currency found during that search of defendant Bennett should not be suppressed.

## III. The Search of the Monte Carlo and Its Contents Was Consistent with the Fourth Amendment

Even if the Court finds that defendant Bennett does have standing to assert a Fourth Amendment claim, the search of the Monte Carlo, and the subsequent seizure of cocaine base, the loaded gun, the Sierra High back pack and its contents, defendant Bennett's employment identification, mail matter in defendant Bennett's name, and the Enterprise letter to defendant Bennett demanding the return of the Monte Carlo were consistent with the Fourth Amendment.

### A. The Monte Carlo Was Subject to an Inventory Search

The Fourth Amendment requires, that an inventory search be reasonable and, if a standard procedure for conducting an inventory search is in effect, it must be followed. United States v. Proctor, 489 F.3d 1348, 1353 (D.C. Cir. 2007).[4/]  Both the decision to take [a] car into custody and the concomitant inventory search must meet the strictures of the Fourth Amendment. United States v. Dugay, 93 F.3d 346, 351, 352 (7th Cir. 1996).  Inventory searches, "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized

---

[4/]    Proctor can be distinguished from our case because, unlike the officers in Proctor, the police officers in our case followed MPD procedures when seizing, impounding, and searching the Monte Carlo.  First, Sgt. Cortright did not search the vehicle on the scene, as in Proctor.  Second, officers took the Monte Carlo to the MPD Fifth District impound facility, and in Proctor, the seized vehicle was taken to a private impound lot.  Third, the Monte Carlo was seized as evidence of a crime, specifically Unauthorized Use of a Vehicle, and in Proctor, the defendant was arrested for driving infractions only.

property, and to guard the police from danger." Colorado v. Bertine, 479 U.S. 367, 372 (1987).

"[R]easonable police regulations relating to inventory procedures administered in good faith satisfy

the Fourth Amendment." Id. at 374.  The inventory search may also have had an investigatory

motive, however, the motive does not invalidate it.  See United States v. Lomeli, 76 F.3d 146, 148

(7th Cir. 1996).  In sum, a warrantless inventory search is constitutionally permissible if "'(1) the

individual whose possession is to be searched has been lawfully arrested,'" and "'(2) the search

satisfies the [F]ourth [A]mendment standard of reasonableness, i.e., it is conducted as part of a

routine procedure incident to incarcerating an arrested person, and in accordance with established

inventory procedures.'" United States v. Richardson, 121 F.3d 1051, 1055 (7th Cir. 1997) (quoting

United States v. Wilson, 938 F.2d 785, 789 (7th Cir. 1991); United States v. Sholola, 124 F.3d 803,

818 (7th Cir. 1997) (after defendant was lawfully arrested, officer was justified in conducting a

routine post-arrest inventory of search of his car); cf. United States v. Gale, 952 F.2d 1412, 1414,

1416- 1417 (D.C. Cir. 1992) (once the defendant was lawfully arrested, the drugs removed from the

trunk of the defendant's car would have been discovered in an inventory search notwithstanding that

police had conducted an illegal interrogation during which the defendant revealed the location of the

drugs).

Here, set against this backdrop, it is clear that once defendant Bennett was arrested -- and

absent any information that he had permission to drive the Monte Carlo, and also having reliable

information that the Monte Carlo was, in fact, stolen -- the police rightly impounded the vehicle as

evidence of a crime.  In addition, once the vehicle was impounded,  it is clear that the applicable

MPD general order permitted Sgt. Cortright to searched the Monte Carlo.  Furthermore,  pursuant

to Proctor, 489 F.3d at 1353, Sgt. Cortright followed MPD procedures in conducting the inventory

search.  Moreover, the pertinent written MPD order authorized the police to inventory the entire vehicle -- including closed containers -- to identify and inventory the vehicle's contents to ensure against claims of lost stolen or damaged property.

**B.    The Monte Carlo Was Subject to a Search Incident to a Lawful Arrest**

In the alternative, upon finding probable cause to arrest defendant Bennett, the officers could have searched the vehicle incident to this arrest without obtaining a search warrant.  New York v. Belton, 453 U.S. 454, 461 (1981).  The Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460.  The Court further held that an officer conducting such a search of an automobile could open and examine any containers - opened or closed - found in the passenger compartment of the car.  Id.  The Court stated that it was not narrowing the scope of its prior holding in Chimel v. California, 395 U.S. 752 (1969), but merely determining the meaning of that holding in the problematic context of automobile searches.  Id. at n.3.  The Court's ruling created a bright-line rule, which the Court found necessary to "guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront."  Id. at 459 (quoting Dunaway v. New York, 442 U.S. 200, 213-214 (1979)).

The Court reiterated the need for a bright-line rule in cases involving the search of an automobile in Thornton v. United States, 541 U.S. 615 (2004).  In Thornton, the Court held that the Belton rule applied even where a police officer did not make contact with the occupant of the car until after the occupant had exited the car.  541 U.S. at 622.  Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to

preserve evidence by searching the entire passenger compartment. Thornton, 541 U.S. at 622-623. Thus, under the law established in Belton and Thornton, once a police officer has arrested an occupant or recent occupant of an automobile, the officer may search the entire passenger compartment of the car without any further justification.   Here, Sgt. Cortright observed defendant Bennett operating, entering, and exiting the stolen Monte Carlo, and he lawfully arrested defendant Bennett, and immediately seized the keys to the Monte Carlo, all within a 20 minute period of time. To follow, Sgt. Cortright could have searched the entire vehicle compartment of the car without a warrant or further justification.  Moreover, after Sgt. Cortright found contraband in the passenger compartment pursuant to a legitimate Belton search incident to arrest, he had probable cause to search the entire vehicle, including the trunk.  Therefore, none of the evidence found in the Monte Carlo should be suppressed.

WHEREFORE, for all of the foregoing reasons, the United States respectfully requests that the defendant's Motion to Suppress be **DENIED**.

## CONCLUSION

WHEREFORE, Defendant Bennett's Motion to Suppress Evidence should be **DENIED**.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney


By:    _____

RHONDA L. CAMPBELL
Assistant United States Attorney
D.C. Bar No. 462402
555 Fourth Street, N.W., Room 4239
Washington, D.C. 20530
(202) 514-9519

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing Government's Opposition to Defendant Bennett's Motion to Suppress was served by the Electronic Case Filing system and first-class United States mail, postage prepaid, on counsel for defendant, Tony Miles, Esquire, Federal Public Defender, 625 Indiana Ave, N.W., Suite 550, Washington, D.C.  20004, this <u>25th</u> day of March, 2008.

_____
RHONDA L. CAMPBELL
Assistant United States Attorney