# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Crim. No. 07-336 (JDB)** |
| | **:** | |
| **ERRICKSTON BENNETT,** | **:** | **Trial Date: May 12, 2008** |
| | **:** | |
| **Defendant.** | **:** | |
| | **:** | |

### GOVERNMENT'S SUPPLEMENTAL MOTION IN RESPONSE TO COURT ORDER FOLLOWING THE MOTION'S HEARING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits Government's Supplemental Motion in Response to Court Order Following the Motion's Hearing. In support of its motion, the Government relies on the following points and authorities:

### I.      Motion's Hearing

On April 22, 2008, this Court held a hearing on defendant Bennett's Motion to Suppress Physical Evidence, and the Government's Response to Defendant's Motion to Suppress. During that hearing, the United States presented one witness, Metropolitan Police Department (MPD) Sergeant Timothy Cortright, along with the submission of nine exhibits. Defendant Bennett did not present any witnesses or evidence at the hearing. At the conclusion of witness testimony, introduction of evidence, and argument by counsel, this Court ruled the following:

1.    Defendant Bennett had no legitimate expectation of privacy in the rented Monte Carlo on November 7, 2007;[1] and

---

[1]Respectfully, the United States submits, it is not necessary to even to reach the question of whether or not the search of the Monte Carlo at MPD's Fifth District was proper, because, in fact, this Court has already ruled that defendant Bennett had no legitimate expectation of privacy

2.    Sgt. Cortright had probable cause to arrest defendant Bennett, and the subsequent search of defendant Bennett was also proper; and

3.    Because the Court is not convinced that the inventory search was consistent with MPD Orders and procedures, and thus not consistent with the Fourth Amendment, the Court required the government to file, after consultation with defense counsel, the pertinent MPD Orders and procedures regarding inventory searches and searches of stolen automobiles, to corroborate Sgt. Cortright's testimony[2] that the search of the Monte Carlo was consistent with MPD Orders and procedures, and was reasonable under the Fourth Amendment.[3]

## II.    The Search Was a Valid Search Incident to Arrest

The government falls back to its initial argument that upon finding probable cause to arrest defendant Bennett, the officers could have searched the vehicle incident to this arrest without obtaining a search warrant.  New York v. Belton, 453 U.S. 454, 461 (1981).  Here, simply because Sgt. Cortright transferred the search to MPD's Fifth District facility rather than performing the search on the scene, it does not necessarily bar the classification of both search incident to arrest and inventory search.

Here, first, Sgt. Cortright's reason for removing the Monte Carlo to another location is expressly stated as appropriate in MPD Order 601.2.[4]  Second, although there was a delay in searching the vehicle because Sgt. Cortright had limited assistance and officer safety concerns,

_____

in the Monte Carlo.

[2]This Court also noted in his findings that Sgt. Cortright's testimony was credible.

[3]Additionally, this Court ordered that these documents, along with further briefing, if necessary, be no longer than three pages, and be filed no later that noon, April 24, 2008.

[4]MPD General Order 602.1(3)(b) Hostile Crowd or Inclement Weather states, in pertinent part, "When an officer believes it would be advisable to remove a vehicle from a public location prior to searching it because a hostile crowd has formed . . ., the vehicle may be taken to the nearest police facility and searched promptly without a warrant (Attached as Exhibit No. 1).

there was no break in the "continuous sequence of events." <u>United States v. Hrasky</u>, 453 F.3d

1099, 1102 (8th Cir.2006) ("the determination of whether a search is a contemporaneous incident

of arrest involves more than simply a temporal analysis." "[A] search need not be conducted

immediately upon the heels of an arrest, but sometimes may be conducted well after the arrest, so

long as it occurs during a continuous sequence of events." "[A]n automobile search which began

one hour after the defendant was arrested was a valid search incident to arrest because we found

the defendant was a "recent occupant.")  Although there was a delay in searching the vehicle, the

search was part of a "continuous sequence of events" <u>id.</u>, and therefore, it is still characterized as

a search incident to arrest, thus a constitutionally valid search.

III.    **Sgt. Cortright Followed MPD Procedures Regarding Inventory Searches and Recovered Stolen Auto**

As the attached MPD General Order 602.1 (Attached as Exhibit No. 1), MPD Special Order

SO-01-05 (Attached as Exhibit No. 2), and MPD Procedures for Handling Traffic Impoundments

(Attached as Exhibit No. 3) indicate, Sgt. Cortright followed MPD Procedures.  More importantly,

even where MPD Orders are silent on specific procedures for searching stolen automobiles, and their

classification when the stolen vehicle contains contraband, Sgt. Cortright's removal, and subsequent

search of the Monte Carlo at the Fifth District Station was reasonable, and certainly <u>not</u> contrary to

MPD procedures.

WHEREFORE, for all of the foregoing reasons, and those reasons expressed in Government

Response to Defendant's Motion to Suppress Physical Evidence, and at the April 22, 2008, hearing

on this motion, the United States respectfully requests that the defendant's Motion to Suppress be

**DENIED**.

3

**CONCLUSION**

WHEREFORE, Defendant Bennett's Motion to Suppress Evidence should be **DENIED**.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

By: _____/s/_____
RHONDA L. CAMPBELL
Assistant United States Attorney
D.C. Bar No. 462402
555 Fourth Street, N.W., Room 4239
Washington, D.C. 20530
(202) 514-9519
rhonda.campbell@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Government's Opposition to

Defendant Bennett's Motion to Suppress was served by the Electronic Case Filing system and

first-class United States mail, postage prepaid, on counsel for Defendant:


Tony Miles, Esq.
Federal Public Defender
625 Indiana Ave, N.W., Suite 550
Washington, D.C.  20004

     this twenty fourth day of April, 2008.


                _____/s/_____
                RHONDA L. CAMPBELL
_____Assistant United States Attorney

# Exhibit No. 1

| GENERAL ORDER | | | EFFECTIVE DATE |
|---|---|---|---|
| | 602 | 1 | May 26, 1972 |
| | DISTRIBUTION | | |
| | A | | |
| Automobile Searches and Inventories | RESCINDS UNIT | | |
| | PDD | | |

The purpose of this order is to establish the policy and procedures governing searches and inventories of vehicles. This order consists of the following part:

PART I   Responsibilities and Procedures for Members of the Department

PART I

A.   Searches.

A search is an examination of a person, place or thing with a view toward discovery of weapons, contraband, instrumentalities of a crime, or evidence. It is to be distinguished from an inventory. A search of an automobile can be classified in one of the following categories:

Searches connected with an arrest.

Searches not connected with an arrest.

1.   Searches Connected With an Arrest.

a.   No Probable Cause to Believe Evidence Is in the Vehicle.

(1)   General Rule.

If a full custody arrest is made of a subject in a motor vehicle and the officer does not have probable cause to believe that the vehicle contains fruits, instrumentalities, contraband, or evidence of the crime for which he has been arrested, only those areas which are within the immediate control of the defendant (the area from which the arrested person might gain possession of weapons or destructible evidence) at the time of his arrest may be searched incident to that arrest. The search shall be conducted in the presence of the defendant. (The scope, time and place of the search shall be governed by part I, paragraphs A1a(2) and A1a(3) of this order).

-2-

Examples of searches with no probable cause are:

(a) <u>Carrying a Dangerous Weapon</u>. An officer
making a routine traffic stop observes a
pistol in the glove compartment which was
opened by the driver as he reached for his
automobile registration. The driver is
arrested for carrying a dangerous weapon.
Only those areas of the interior of the ve-
hicle within the driver's immediate control
at the time of his arrest should be searched
because there is no probable cause to be-
lieve there is other evidence of the offense
for which he was arrested in the vehicle.

(b) <u>Full Custody Traffic Arrest</u>. An officer ar-
rests a driver of a vehicle for driving
after revocation. Before he is transported
to a district station, those areas of the
vehicle within the immediate control of the
defendant at the time of his arrest should
be searched. However, areas beyond his im-
mediate control should not be searched be-
cause there is no probable cause to believe
that the vehicle contains fruits, instrumen-
talities, contraband, or evidence of the
offense of driving after revocation.

(2) <u>Scope of the Search</u>.

The arresting officer may search all areas of
the vehicle which are within the <u>immediate
control</u> of the defendant at the time of his
arrest, including those areas from which he
might gain possession of a weapon or destructible
evidence. If items discovered during his limited
search give the officer probable cause to believe
that fruits, instrumentalities, contraband, or
other evidence of a crime is in the vehicle, then
those areas of the vehicle which could physically
contain such evidence shall be searched. An ex-
ample of the scope of the search is:

An officer arrests a driver of a vehicle for driving
after revocation. A search under the driver's
seat, incident to the arrest, reveals a bottlecap
cooker and syringe. The officer may now search

-3-

the entire vehicle since there is probable cause
to believe that other implements of a crime may
be in areas of the vehicle beyond the immediate
control of the defendant.

(3) Time and Place of the Search.

If a full custody arrest is made of a subject in
or near a vehicle and the officer does not have
probable cause to believe that fruits, instrumen-
talities, contraband, or evidence of the crime
for which the arrest was made may be found in
that vehicle, the limited search of that vehicle
incident to the arrest shall be conducted at the
time and place of the arrest within the immediate
presence of the defendant.

(4) Plain and Open View Rule.

Nothing in this order should be construed to limit
the authority of an officer to seize any item
which he observes in plain and open view (including
items observed in plain view at night by means of
a flashlight) beyond the immediate control of a
subject, if the officer has probable cause to be-
lieve that such item constitutes fruits, instru-
mentalities, contraband, or evidence of a crime.

(5) Non-Custodial Arrests.

Traffic violators who are asked to accompany an
officer to a district station (e.g., nonresident
traffic violators who commit moving violations)
and are not placed under full custody arrest shall
not be searched and their vehicles shall not be
searched unless an officer reasonably suspects the
violator to be armed, in which case the subject
may be frisked for weapons.

b. Probable Cause to Believe Evidence Is in the Vehicle.

(1) General Rule.

If a full custody arrest is made of a subject in
a motor vehicle or of a subject in close proximity

-4-

to a motor vehicle who has just departed from or
is about to enter a vehicle, and the arresting
officer has probable cause to believe that the
vehicle contains either fruits (e.g., stolen
goods), instrumentalities (e.g., tools used in
a burglary), contraband (e.g., narcotics, sawed-
off shotgun), or evidence (e.g., clothing worn
by a robber) of the crime for which he was ar-
rested, the vehicle shall be searched. (The
scope, time and place of the search shall be
governed by part I, paragraphs A1b(2) and A1b(3)
of this order). Examples of probable cause
searches are:

(a) <u>Vehicle Used in Robbery</u>. An officer has
    observed a vehicle described in a lookout
    for a robbery holdup which occurred 1 hour
    earlier, in which two men wearing ski masks
    and carrying pistols obtained an undetermined
    amount of money. After arresting the two
    occupants of the vehicle, the entire vehicle
    should be searched at the scene of the ar-
    rest since the officer has probable cause
    to believe that the money obtained and the
    pistols and ski masks used in the robbery
    may be hidden in areas within and beyond the
    immediate control of the suspects.

(b) <u>Sale of Narcotics From Vehicle</u>. A plain-
    clothes officer arrests a subject in or near
    a vehicle. He has had the subject under
    observation for the previous hour for the
    sale, from the vehicle, of narcotics to
    individuals who approached the vehicle. All
    areas of the vehicle should be searched since
    the officer has probable cause to believe that
    a supply of narcotics remains in other areas
    of the vehicle, such as the trunk or glove
    compartment.

(2) <u>Scope of the Search</u>.

    When an officer arrests a subject in or near a
    vehicle and he has probable cause to believe that
    vehicle contains fruits, instrumentalities,

-5-

contraband, or evidence of the crime for which the
arrest was made, only those areas of the vehicle
which could physically contain that evidence shall
be searched. Examples of the scope of the search
are:

(a) Vehicle Used in Burglary. An officer has
stopped a vehicle for a traffic spot check
and has been informed by the dispatcher that
the vehicle has been reported as being used
in a burglary which occurred a few hours
earlier in which a portable television set
was stolen. Since it is generally known that
most burglaries are effected by means of
small tools, easily concealed, all areas of
the vehicle may be searched for such tools,
unless the officer has specific information
that entry was gained in a manner other than
by use of a small tool. In such a case, only
those areas of the vehicle which could phy-
sically contain the portable television set
or the object used to enter the premises may
be searched because they are the only areas for
which the officer has probable cause to be-
lieve that fruits, instrumentalities, or evi-
dence of the crime for which the arrest has
been made may be contained.

(b) Vehicle Containing Large Object Used in a
Homicide. A vehicle is stopped, pursuant to
a lookout, for a suspect wanted in connection
with a homicide in which the deceased was
struck with a tire iron which the assailant
was seen carrying toward the vehicle. The
officer should not search the locked glove
compartment because the large object could
not be contained in such a small space. The
trunk, however, should be searched for the
object. If, however, there is some other
missing item of evidence (e.g., a bloodstained
glove of the suspect), the locked glove com-
partment may be searched if there is probable
cause to believe that the item is in the pos-
session of the suspect or in the vehicle at
the time of the arrest.

(3) <u>Time and Place of Search</u>.

The search of the vehicle shall be conducted as
soon as the prisoner is placed in secure custody
and ordinarily at the scene of the arrest. It
is not necessary to keep the prisoner near the
vehicle during this type of search. In those
exceptional cases where it is not practical to
conduct a search of the automobile at the scene
of the arrest, the vehicle shall be removed to a
police facility or other area where the search
shall be conducted as soon as possible. In those
cases where the search is conducted at a place
other than the scene of the arrest, an officer
shall remain with the vehicle to ensure a con-
tinuous chain of custody prior to the search.
Examples of exceptional cases where search may be
delayed are:

(a) <u>Keys to Locked Area not Available</u>. When the
search of a locked trunk or glove compartment
of a vehicle is not possible at the scene of
the arrest because keys are not available,
the officer shall notify the Auto Theft Sec-
tion and request that a set of keys be sent
to the location to which the vehicle has been
taken. If keys are not available, instruc-
tions shall be obtained from the Property Di-
vision as to the method to be used in opening
the locked trunk or glove compartment. No
search warrant is required, but the search
shall be conducted as soon as possible.

(b) <u>Hostile Crowd or Inclement Weather</u>. When an
officer believes it would be advisable to
remove a vehicle from a public location
prior to searching it because a hostile crowd
has formed or because the weather is incle-
ment, the vehicle may be taken to the nearest
police facility and searched promptly without
a warrant.

(4) <u>Search Warrant</u>.

When an officer arrests a subject in or near a
vehicle and he has probable cause to believe that
the vehicle contains fruits, instrumentalities,
contraband, or evidence of the crime for which
the subject is arrested, all those areas of the
automobile which can contain such evidence shall

-7-

be searched <u>without</u> a search warrant. In those
exceptional cases where the search is not com-
pleted at the scene of the arrest and the vehicle
is removed to a police facility or other area, the
search shall be completed, as soon as possible,
<u>without</u> a search warrant. In cases where there is
adequate time to obtain a search warrant <u>prior</u> to
the arrest of a subject in a vehicle, a warrant
shall be obtained for the search of the vehicle.
One example of the necessity for a search warrant
is:

    <u>Adequate Time to Obtain Search Warrant
Before Making Arrest in Vehicle</u>. A subject
has been under surveillance for several days
because of the officer's suspicion that he is
selling stolen property from his vehicle. If
probable cause to arrest is gathered and the
decision is made to obtain an arrest warrant for
the subject, a search warrant for the vehicle
should also be obtained because there is ade-
quate time to do so.

2.  <u>Searches Not Connected with an Arrest</u>.

    <u>General Rule</u>. If an officer has probable cause to believe
that a parked, unoccupied vehicle, whether locked or unlocked, contains
fruits, instrumentalities, contraband, or evidence of a crime, all those
areas of the vehicle which can contain such evidence shall be searched
without a search warrant if the vehicle appears to be in such operational
condition that it can be moved or easily rendered movable by minor repairs.
If, however, a vehicle does not appear to be movable and there is adequate
time in which to obtain a search warrant, such warrant shall be obtained
prior to entering the vehicle. One example of such a search is:

    An officer has been informed by a citizen that he observed a
person place a sawed-off shotgun in the trunk of a vehicle one-
half hour earlier. The citizen gives his name and address and ac-
companies the officer to the vehicle, which appears to be operational
except for a flat rear tire. The officer may immediately search the
trunk of the vehicle without a search warrant because he has probable
cause to believe that the shotgun is in the trunk of the vehicle and
the vehicle may be easily rendered movable by a minor repair. If,
however, the vehicle has been completely stripped, including the
wheels, the officer should obtain a search warrant prior to searching
the trunk of the vehicle.

-8-

B. Inventories.

An inventory is an administrative process by which items of property are listed and secured. An inventory is not to be considered or used as a substitute for a search. Automobiles coming into the custody of the police department shall be classified for purposes of this paragraph relating to inventories in one of the following five categories:

Seizures for purposes of forfeiture.

Seizures as evidence.

Prisoner's property.

Traffic impoundments.

Non-criminal impoundments.

The officer's right to inventory an automobile and the time and scope of any such inventory depend upon the category into which it is classified.

1. Seizures for Purposes of Forfeiture.

a. Narcotics. When an officer has probable cause to believe that a vehicle has been used to transport illegally possessed narcotics, he shall take the vehicle into custody and classify it as a seizure for purpose of forfeiture only if both of the following conditions exist:

(1) A substantial amount of drugs is involved.

(2) The owner of the vehicle (not necessarily the user of the vehicle) is a significant drug violator.

No seizure under this paragraph shall be made without approval of an official of the Narcotic Branch. If a vehicle used to transport illegally possessed narcotics cannot be seized under this paragraph, it may not be inventoried unless it can be classified and inventoried under another section of part I, paragraph B of this order. As example of seizures based on narcotics violations is:

An officer stops an automobile and observes a glassine envelope containing a small amount of a substance which he has reason to believe is heroin in plain and open view on the floor boards. The

-9-

driver (who is the owner of the vehicle) is arrested
for illegal possession of narcotics. The officer
contacts an official of the Narcotics Branch and is
informed that because the driver has no previous nar-
cotics record and the amount of narcotics seized is
not substantial, the vehicle may not be seized for
purposes of forfeiture. It may be classified, however,
as prisoner's property pursuant to part I, paragraph
B3 of this order and inventoried to the extent allowed
under the rules contained in that paragraph.

b. Gambling. When an officer has probable cause to be-
lieve that a vehicle is being or has been used to con-
duct illegal gambling activities, it may be seized
for purposes of forfeiture, irrespective of the age,
value, or condition of the vehicle.

(1) Authorization. No seizure under this paragraph
shall be made without approval of an official of
the Gambling and Liquor Branch.

(2) Examples of Seizures for Purposes of Forfeiture
Based Upon Gambling Violations.

(a) Vehicle Used by Numbers Runner. After sur-
veillance, officers develop probable cause to
believe that a person is a numbers runner and
that a vehicle which he owns or used has been
used to conduct the numbers operation. The of-
ficers obtained an arrest warrant and a
search warrant for his vehicle. When the of-
ficers execute the arrest warrant during one
of the runs, the defendant's vehicle may be
seized for purposes of forfeiture if such
seizure has been approved by an official of
the Gambling and Liquor Branch.

(b) Arrest for Possession of a Numbers Slip. On
a routine traffic stop an officer observes in
the driver's wallet a single numbers slip and
arrests the driver for its possession. If the
evidence indicates that the driver was simply
a person who placed a numbers bet rather than
one who was involved in conducting a gambling

-10-

operation, the vehicle may not be seized for
purposes of forfeiture.

c. **National Firearms Act Violations.** When an officer has
probable cause to believe that a vehicle has been used
to transport a firearm possessed illegally under the
National Firearms Act (49 U.S.C. §§ 781-788), he shall
follow the procedures contained in General Order No.
601.1 in determining whether the vehicle shall be seized
for purposes of forfeiture under the Act.

d. **Procedure.** An officer who seizes an automobile for
purposes of forfeiture shall completely inventory the
contents of the automobile immediately upon its ar-
rival at a police facility. The scope of that inventory
shall be limited by the rules provided in part I, para-
graph B6 of this order. Upon completion of the inventory
the officer shall obtain instructions from an official
of either the Narcotic or Gambling and Liquor Branch or
from an agent of the Alcohol, Tobacco and Firearms Di-
vision of the Internal Revenue Service, relating to
appropriate further processing of the vehicle.

2. **Seizures as Evidence.**

When an officer has probable cause to believe that a vehicle
is a fruit, instrumentality, or evidence of a crime, he shall take the
vehicle into police custody and shall classify it as a seizure as evidence

a. **Examples of Seizures as Evidence.**

(1) **Homicide in an Automobile.** A citizen is shot to
death in an automobile. After appropriate on-the-
scene processing by the Homicide Section, the ve-
hicle shall be seized as evidence because it is
evidence and, in addition, may contain evidence
of the offense.

(2) **Vehicle Used in an Offense.** Two days after a bank
robbery an officer locates an automobile which has
been described by witnesses as the getaway vehicle
Whether or not an arrest has been made in the case,
the vehicle shall be seized as evidence because it
is an instrumentality of the offense of bank robbery.

NOTE: Although whenever there is either a moving or a parking
traffic violation the vehicle involved is technically evidence of

-11-

that offense, vehicles shall _not_ be seised as evidence simply because they were involved in relatively minor traffic offenses. However, if a vehicle has some evidentiary value beyond the fact that it was used to commit a minor traffic offense it shall be seised as evidence.

      b.  <u>Procedure</u>. An officer who seizes a vehicle as evidence shall completely inventory the contents of the vehicle immediately upon its arrival at a police facility, provided that such an inventory will not damage or destroy any evidence contained therein. The scope of that inventory shall be limited by the rules provided in part I, paragraph B6 of this order.

      c.  <u>Release of Vehicle</u>. Vehicles seized as evidence shall not be released to any person until the appropriate prosecutor has signed the proper release form indicating that the vehicle is no longer needed as evidence. In cases where a prosecutor is unavailable and application of this rule would result in hardship to an innocent party, verbal authorization may be obtained by telephone from an Assistant United States Attorney on emergency duty for the month or from any other available Assistant United States Attorney.

3.  <u>Prisoner's Property</u>.

When a person is arrested in an automobile which he owns or has been authorized to use and the vehicle cannot be classified under part I, paragraph B1 or B2 of this order, that vehicle shall be classified as prisoner's property. One example of prisoner's property is:

      <u>Robbery Suspect</u>. A liquor store owner has been robbed by a single assailant who fled on foot. Ten days after the offense the defendant is arrested on a warrant in an automobile. Since there is no basis for seizing the automobile either as evidence or for purposes of forfeiture, the automobile shall be classified as prisoner's property.

      a.  <u>Disposition of Prisoner's Property</u>. A vehicle which is classified as prisoner's property shall be disposed of in any lawful manner in which the person arrested directs. In any case where a prisoner requests that his vehicle be lawfully parked on a public street, he shall be required to indicate his request in writing. An example of disposition of prisoner's property is:

-12-

Robbery Arrest. In the robbery example above, the defendant is accompanied by his wife at the time of his arrest. If the defendant so requests, his wife shall be permitted to drive the vehicle from the scene of the arrest. If the defendant is alone at the time of arrest and requests that the vehicle be lawfully parked pending notifi- cation of his wife, the request shall be honored, so long as he indicates his request that the ve- hicle be so parked in writing.

b.  Initial Procedure. If a vehicle classified as prisoner's property is disposed of so that it is not taken to a police facility, it shall not be in- ventoried in any way. If it is necessary to take such a vehicle into police custody, the vehicle shall be taken to a police facility or to a location in front of or near a police facility. Immediately upon arrival at the police facility the arresting officer shall remove from the passenger compartment of the vehicle any personal property which can easily be seen from outside the vehicle and which reasonably has a value in excess of $25. After removing such property, if any, the officer shall make sure that the windows are rolled up and the doors and trunk are locked. Any property so removed shall be brought into the police facility and appropriate entries and returns made in accordance with General Order No. 601.1. No other inventory or search of the vehicle shall be made at this time.

c.  Procedure After 24 Hours. If a person authorized by the prisoner or the prisoner himself, upon his release, does not claim the vehicle within 24 hours of the time that the prisoner was arrested, a complete inventory of the contents of the automobile shall be made by the arrest- ing officer or an officer designated by an official. The scope of that inventory shall be limited by the rules provided in part I, paragraph B6 of this order.

4.  Traffic Impoundments.

Only those vehicles which, pursuant to section 91 of the D.C. Traffic and Motor Vehicle Regulations, are taken into police custody and placed on police department property or at a location in front of or

-11-

near a police facility shall be classified as "traffic impoundments." Ve-
hicles classified as traffic impoundments shall be inventoried only in ac-
cordance with part I, paragraphs B4d and B4e of this order. If a vehicle
is not placed on police department property or near a police facility, it is
not a traffic impoundment and shall not be inventoried or searched in
any way.

   a. Non-impounded Vehicles. Except as provided in part I,
      paragraph B4e below, whenever an officer causes a
      vehicle to be moved pursuant to the traffic regulations,
      the vehicle shall, if possible, be moved to a location
      on a public street as close to the original location as
      possible, consistent with prevailing traffic conditions.

   b. Procedure in Non-impoundment Situations. Vehicles
      moved but not taken to a police facility or to a lo-
      cation in front of or near a police facility shall
      not be classified as traffic impoundments and shall
      not be inventoried or searched in any way. However,
      the officer who caused the automobile to be moved shall
      make sure that the windows of the automobile are rolled
      up and, if possible, the trunk and doors are locked
      before he leaves the vehicle. In all cases where a
      vehicle is moved without the knowledge of the owner,
      the Teletype Branch shall be notified in accordance
      with General Order No. 601.1. An example of a non-
      impoundment situation is:

         Illegal Parking on Main Arteries During Rush Hour.
         Illegally parked vehicles are disrupting the flow
         of traffic on a main artery during rush hour. The
         vehicles should be moved to a location as close to
         the original location as possible, consistent with
         prevailing traffic conditions. The vehicle shall
         not be inventoried or searched in any way.

   c. Impoundments in Exceptional Circumstances. Only in
      exceptional circumstances shall the vehicle be im-
      pounded for traffic violations and taken to police
      property or to a location in front of or near a police
      facility. Examples of exceptional circumstances are:

      (1) Large Amounts of Personal Property in Plain View
          Within the Automobile. A vehicle is unlawfully

-14-

parked on Constitution Avenue during rush hour.
Large amounts of clothing and a number of suitcases
are in plain view on the back seat of the automobile. In order to protect the citizen's property,
the automobile shall be impounded and towed to a
police facility or to a location in front of or
near a police facility.

(2) <u>Outstanding Traffic Warrants</u>. A vehicle is unlawfully parked in front of a fire hydrant. A WALES
check discloses that there is a traffic arrest
warrant outstanding for the registered owner in
addition to 10 unpaid traffic tickets. The vehicle shall be impounded and taken to a police
facility or to a location in front of or near the
police facility. The vehicle shall not be released
to the citizen until collateral in the appropriate
amount for the outstanding and present violations
is posted.

In these circumstances, the vehicle may also
be immobilized by use of a boot or other immobilizing device. If a vehicle is immobilized, rather
than impounded and brought to a police facility,
the vehicle shall not be inventoried in any way.

d. <u>Procedure in Impoundment Situations Upon Arrival at
Police Facility</u>. Immediately upon arrival at the
police facility, the impounding officer shall remove
from the passenger compartment of the vehicle any
personal property which can easily be seen from outside the vehicle and which reasonably has a value in
excess of $25. After removing such property, if any,
the officer shall make sure that the windows are rolled
up and, if possible, that the doors and trunk are
locked. Any property so removed shall be brought into
the police facility and appropriate entries and returns
made in accordance with General Order No. 601.1. No
other inventory or search of the vehicle shall be made
at this time. An example of an impoundment situation
upon arrival at a police facility is:

<u>Large Amounts of Personal Property in Plain View
Within the Automobile</u>. In the example above relating to large amounts of clothing and suitcases

-15-

within the automobile, the officer shall remove the
clothing and suitcases from the automobile immediately
upon arrival at the police facility. He shall not
examine the glove compartment, search under the seat,
or make any other search at this time. The windows
shall then be rolled up and the vehicle locked. Ap-
priate entries and returns shall be made in accord-
ance with General Order No. 601.1.

e.  Procedure in Impoundment Situations After 24 Hours.  If
a vehicle which has been impounded is not claimed by the
registered owner or a person authorized by the registered
owner within 24 hours of the time that the vehicle was
impounded, a complete inventory of the contents of the
automobile shall be made by the impounding officer or
an officer designated by an official. The scope of that
inventory shall be limited by the rules provided in part
-, paragraph B6 of this order.

5.  Non-Criminal Impoundments.

When an officer takes a vehicle into police custody because
there is reason to believe that it is abandoned, part of the estate of a
deceased person, property of an insane person or a person taken to the
hospital, or property turned over to the police at the scene of a fire
or disaster, he shall classify it as a non-criminal impoundment.

Procedure. Since the vehicle may be in police custody for an
undetermined period of time, an officer who impounds a vehicle as
a non-criminal impoundment shall completely inventory the vehicle
immediately upon its arrival at a police facility. The scope of
that inventory shall be limited by the rules provided in part I,
paragraph B6 of this order.

6.  Scope of Inventory.

Whenever an officer has a right to inventory a vehicle pur-
suant to this order, the officer shall examine the passenger compartment,
the glove compartment, whether or not locked, and the trunk, whether or
not locked. Any items of personal property which reasonably have a value
in excess of $25 shall be removed from the vehicle and placed in secure
custody. All items so removed shall be listed and recorded on a property
return as provided in General Order No. 601.1. Any container such as

-16-

boxes or suitcases found within the vehicle shall be opened and any item of personal property found in such containers which reasonably has a value in excess of $25 shall be listed and recorded separately. Immediately upon completion of the inventory, the officer shall make sure that the windows are rolled up and the doors and the trunk are locked.

Jerry V. Wilson
Chief of Police

JVW:mj

# Exhibit No. 2

# SPECIAL ORDER



**DISTRICT OF COLUMBIA**

Title
**Recovered Stolen Vehicles**

Series / Number
**SO – 01-05**

Effective Date | Distribution
**March 1, 2001** | **A**

Related to
General Order SPT – 303.03 (Tow Crane Operation and Enforcement)
General Order SPT – 601.01 (Recording, Handling and Disposition of Property Coming Into the Custody of the Department)

## I.    BACKGROUND

When a vehicle previously reported as stolen is recovered, the Metropolitan Police Department has the responsibility for taking control of the vehicle and of notifying the owner where the vehicle can be reclaimed. Since recovered stolen vehicles are towed by private tow cranes called by the MPD Communications Division, it is essential that members maintain an accurate record of the towing company and the location of its storage lot. Members must also ensure that the owner is promptly and accurately informed as to the location of the vehicle, so that towing and storage costs can be held to a minimum.

## II.    PURPOSE

It is the purpose of this directive to hold the recovering officer responsible for making the appropriate notification to the owner/operator of a recovered stolen vehicle and for documenting the notification on all police reports, particularly the PD Form 81. If unable to contact the owner or reporting person, recovering officers are required to bring this fact to the attention of the element's station clerk and turn over the PD Form 81 to the station clerk. Station personnel are then responsible for notifying the owner or reporting person and completing all the appropriate documentation of the notification.

## III.    DEFINITION

When used in this directive, the term "owner" shall mean the individual named on the vehicle's title, registration, or bill of sale, or an agent representing the owner's insurance company.

## IV.    PROCEDURES

### A.    Towing Recovered Stolen Vehicles

1.    It is imperative that any suspected stolen vehicle be properly and fully identified before engaging in the recovery process. This includes confirmation of the stolen vehicle's license plate **(if any)** and vehicle identification number (VIN).

**RECOVERED STOLEN VEHICLES (SO – 01-05)**

2.    Members recovering vehicles which are classified as "Recovered Stolen Auto" shall proceed as follows:

- a.    After the vehicle has been processed and examined for contraband and any owner's records, attempt to contact the owner through the radio dispatcher. If the vehicle is operational and the owner is able to respond promptly to the scene and take possession of the vehicle, the officer shall, upon obtaining adequate proof of ownership, return the vehicle to the owner or a designated agent of the owner after executing a PD Form 81-A.

- b.    When all efforts to secure the release of the vehicle from the field have been exhausted, or when it has been determined to be impractical for the member to remain out of service for an extended period in order to await the arrival of the owner, the member shall contact the radio dispatcher and request the services of a towing firm participating in the MPD towing rotation list.

- c.    (Towing of recovered stolen vehicles shall be at no cost to the Metropolitan Police Department; applicable towing or storage fees will be charged to the vehicle owner/operator and/or insurance company.)

- d.    Inventory the vehicle as required by General Order SPT - 602.01 (Automobile Searches and Inventories), prior to releasing the vehicle to the responding tow crane.

  - (1)    Any property in the passenger compartment with a value in excess of $25 shall be removed for safekeeping.

  - (2)    Any property removed from the vehicle shall be listed on a separate PD Form 81 and handled in accordance with the procedures outlined in General Order SPT - 601.01.

  - (3)    The tow crane operator shall be provided with a properly completed PD Form 82-A (Property Receipt) to document the removal of the property from the vehicle.

  - (4)    The inventory shall be performed in the presence of the tow crane operator.

- e.    If the vehicle is to remain in the custody of the department (towed to an MPD facility), a PD Form 81 (Property Record) shall be prepared before releasing the vehicle to an MPD tow crane operator for removal. The PD Form 81, after review and



signing, shall be turned over to the station clerk for forwarding to the organizational element's property officer.

f.    If not released to the owner, recovered stolen vehicles (even those that are in such material condition as to be considered "worthless") shall be towed to the storage lot of the responding tow crane to await appropriate disposition by the owner or insurance company.

g.    Prepare the appropriate police reports required by the recovery, to include all appropriate notifications as required by this order and as outlined in General Order 601.01.

h.    The recovering member, regardless of assignment, is responsible for preparation of the reports, even in instances when a vehicle is impounded at a facility other than the recovering member's assigned organizational element.

i.    The vehicle shall be recorded on the element's Property Book (PD Form 82) and a copy of the tow ticket attached to the right-hand page. Any additional information indicating the location of the vehicle (e.g., towing company storage lot, address, telephone number) should also be entered on the right-hand page. The completion of PD Form 81 and entries on the Property Book shall be made as soon as practicable, but in all instances prior to the completion of the recovering member's tour of duty.

j.    The owner/insurance company shall be advised of the vehicle's location, including the name, address and telephone number of the towing company that has custody of the vehicle and the company's towing fees and daily storage charges for which the owner will be responsible.

k.    Members shall make appropriate contact with officials in any other police district in which the owner is known to work or reside so that all possible assistance can be given in notifying or locating the owner of the recovered vehicle.

l.    Recovering members shall ensure that all appropriate notifications are made to the MPD Telecommunications Branch, documenting the date, time and persons notified. In addition, if the auto is not driveable, is stripped of any parts (doors, wheels, engine, transmission, air bags), or is missing its vehicle identification number, this information shall be made known to the Telecommunications Branch as well as documenting these findings in the PD Form 251/252.

**RECOVERED STOLEN VEHICLES (SO – 01-05)**

3.    If the recovering member is unable to contact the owner prior to the end of the tour of duty, he/she shall be governed by the provisions set forth in General Order 601.01 (Recording, Handling and Disposition of Property Coming into the Custody of the Department), turning over the PD Form 81 to the oncoming station clerk who shall then be responsible for notifying the owner and completing all appropriate documentation of notification efforts.

> a.    All documented notifications shall include: person notified, member making notification, method of notification, and date and time of notification.

> b.    The towing company shall be informed by either the recovering officer, station clerk, or the property officer as to when the owner has been notified, and whether by telephone or by certified mail.

> c.    If station clerks are unable to notify the owner or reporting person, all efforts shall be documented and the PD 81 turned over to the element property officer. The fact that the notification was not made and is pending shall be brought to the attention of the element property officer and the Assistant District Commander.

> c.    The element property officer will then be responsible for making the notification and completing all documentation.

> d.    If unable to make notification within 48 hours, element property officers shall forward a notification letter (see sample attached) to the owner by certified mail, return receipt requested.

> e.    Element property officers shall ensure that copies of all letters and mail receipts are maintained in a file with the element's copy of the PD 81.

> f.    Element property officers shall review the Property Book on a daily basis to ensure that a PD 81 is received for each recovered stolen vehicle and the required owner notification has been made.

4.    All lieutenants and above who review and approve PD Form 81s for recovered stolen vehicles shall ensure that the required notifications are properly documented on all police reports and, if notification was not made, that all efforts are documented and that a station clerk is assigned responsibility for the notification.

5.    District Commanders shall ensure that members of their command comply with the above notification requirements and those in General Order 601.01

and that direct notification is made or a certified notification letter forwarded for each stolen auto recovered and listed on their element Property Book.

6.    A sample notification form letter is attached to this directive. Addressed envelopes containing completed notification letters shall be brought to the Police Mail Room, Room 4036, where postage and certified mail receipts will be provided.

## B.    Insurance Company Information

Members shall attempt to determine the owner/operator's insurance company for each recovered stolen vehicle.

1.    The recovering officer shall query the owner or examine the interior during the vehicle inventory to determine the name and, if available, the address and telephone number of the insurance carrier.

2.    The information shall be entered in the narrative section of all police reports prepared to document the recovery, particularly the PD Form 81 (Property Record).

3.    The recovering officer shall query any available insurance company program (e.g., NICB) designed to coordinate stolen vehicle insurance files. The NICB database may be accessed through the MPD Telecommunications Branch (202-727-4225), or SID Auto Theft (202-724-1360).

4.    In the event that a questioned vehicle is destroyed by fire or has had its vehicle identification number altered, destroyed or removed and the member is unable to establish the vehicle's true identity by any other reasonable means, then the member shall attempt to reach the SID Auto Theft Unit.

5.    If the Auto Theft Unit cannot be contacted at the time, the vehicle shall be taken into custody and removed to an MPD-controlled facility by an MPD tow crane. In such cases, the member shall prepare a PD Form 81 for Suspected Proceeds of Crime and make notification to the Auto Theft Unit with a copy of the PD Form 81. The Auto Theft Unit will be responsible for the ultimate identification of the questioned auto, the preparation of any recovery reports, and notification to the owner.

## V.    RELEVANT CALEA STANDARDS

See    Chapter 61 (Traffic)
       Chapter 84 (Property and Evidence Control)

**RECOVERED STOLEN VEHICLES (SO – 01-05)**

## VI.    RESCISSION OF OTHER DOCUMENTS

Special Order 97-23 (Contract Towing Services for Recovered Stolen Vehicles, etc.) is rescinded. This special order also supersedes any previous organizational directives, memoranda, and teletype messages on the subject of towing services for recovered stolen vehicles and shall remain in effect until officially revised, rescinded, or incorporated into the appropriate general order.

Charles H. Ramsey
Chief of Police

Attachment

CHR:NAJ:JG:AFA:afa

# Exhibit No. 3

# METROPOLITAN POLICE DEPARTMENT PROCEDURES FOR HANDLING TRAFFIC IMPOUNDMENTS



July 21, 2005



# OBSERVATION

Issues:

- No clear procedures on traffic impoundment tows

- Where are the vehicles towed?

- Which agency is responsible for the tow?



# BACKGROUND

- Problems arose after the closure of the DPW's Brentwood impoundment lot

- Met with DPW representatives to discuss traffic impoundment tows

- Resolutions from the meeting



# DEFINITIONS

Traffic Impoundment:

- What is an unregistered vehicle?

- The District of Columbia requires certain motor vehicles to be registered and if not, the vehicle shall be towed and impounded

- Not all traffic offenses require that the vehicle be tow

- Vehicles can be impounded as "Prisoner's Property"

- When a vehicle is not the subject of a violation, it is not always handled as a "Traffic Impoundment"

**METROPOLITAN POLICE**

# PROCEDURAL GUIDELINES

Members shall:

1. during business hours, 0700-1800 hours, Monday through Friday, request through the OUCC for a DPW tow crane to response to handle the tow

2. during non business hours (1800-0700 hours and weekends), request through the OUCC for a MPD or contract tow crane to handle the tow

3. prepare PD Form 81 and NOI.

4. classification



## Members shall (contd):

5. Record the vehicle's information in the Property Book along with the TCN

6. Submit the completed PD Form 81 and NOI

7. "pink" copy of the NOI

## Members shall (contd):



8. Handle mopeds and ATVs tows in the same manner as all other traffic impounded vehicles with the exception of the manner of towing

9. Request a flatbed tow crane for mopeds and ATV tows

## Dispatcher (OUCC) shall:

1. forward all tow impoundment tow request to the TCC and ensure TCN are assigned

2. normal business hours, ensure that a DPW to crane is dispatched to handle the tow

3. non business hours, ensure that a MPD or contract tow crane is dispatched to handle the tow



METROPOLITAN POLICE

## District Property Officers shall:

1. maintain custody and control over impounded vehicles towed to their lot

2. entered all tow impounded vehicles into AEGIS

3. ensure that the "pink' copy of the NOI is affixed to vehicles' windshield and provided to DPW tow crane operator

4. conduct WALES check for stolen





## District Property Officers shall (contd):

5.  notification to DPW to transfer all traffic impoundment vehicles to a DPW lot

6.  provide the WALES printout to the DPW tow crane operator

7.  record the date, time and DPW tow crane operator name's in the Property Book and on the PD Form 81

8.  ensure that a DPW tow crane respond within 24 hours

9.  notification to the MPD Towing Coordinator when the vehicle has not been towed within 24 hours of being notified

# COMMENTS

After reviewing the traffic impoundment tow procedures recommendation, email any comments to Captain Taliaferro by next Friday, July 29, 2005, before these recommendations are sent to the EAC for approval

