UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAY 0 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 07-336 (JDB) |
| ERICKSTON BENNETT, | |
| Defendant. | |

## MEMORANDUM AND ORDER

On April 22, 2008, the Court held a hearing on defendant Erickston Bennett's motion to suppress physical evidence. At the hearing, the government presented nine exhibits and the testimony of Metropolitan Police Department ("MPD") Sergeant Timothy Cortright. The defendant, on the other hand, did not present any evidence or witnesses. At the conclusion of the hearing, the Court made several rulings. The Court determined there was probable cause to arrest Bennett on November 7, 2007, and that the subsequent search of his person was proper. The Court also concluded that Bennett had no legitimate expectation of privacy in the rented Monte Carlo that had been reported stolen approximately six months prior to his arrest. See Rakas v. Illinois, 439 U.S. 128, 141 n.9 (1978) (finding "inexplicable" several lower courts' holdings "that a person present in a stolen automobile at the time of a search may object to the lawfulness of the search of the automobile"); United States v. Tropiano, 50 F.3d 157, 161 (2d Cir. 1995) (stating "we think it obvious that a defendant who knowingly possesses a stolen car has no legitimate expectation of privacy in the car"); United States v. Lanford, 838 F.2d 1351, 1353 (5th Cir. 1988) (holding that possessors of stolen vehicles have no legitimate expectation of

privacy to challenge a search of the stolen vehicle).

Although the defense attempted to argue that this situation differed from the typical stolen car setting because Bennett had initially rented the Monte Carlo, the Court was unpersuaded by this attempted distinction. Bennett originally rented the Monte Carlo from Enterprise Leasing Corporation through his insurance in January 2007. When his insurance company refused to continue paying for the rental, he began billing the car to his credit card. In April 2007, Bennett reached the limit on his credit card and stopped making payments to Enterprise. Enterprise subsequently sent several demand letters to Bennett, seeking the prompt return of the vehicle. These letters were recovered from the car at the time Bennett was arrested. At least six months prior to Bennett's arrest, Enterprise reported the vehicle as stolen. Based upon the evidence in the record, the Court determined at the hearing that Bennett had sufficient notice that his possession of the vehicle was unauthorized.

Because Bennett knew his possession of the Monte Carlo was unauthorized, because the unauthorized possession continued over a lengthy period of time for at least six months, because Bennett was no longer paying for the car, and because Enterprise had taken action to seek recovery of the vehicle, the Court concluded that Bennett had no legitimate expectation of privacy in the Monte Carlo despite its origins as a rental vehicle. See United States v. Thomas, 447 F.3d 1191, 1199 (9th Cir. 2006) (holding that the unauthorized driver of a rental car had no reasonable expectation of privacy in the vehicle and could not challenge the search of the car because he failed to show that he had received permission to use the vehicle); United States v. Wellons, 32 F.3d 117, 119 (4th Cir. 1994) (stating that "an unauthorized driver of the rented car,

had no legitimate privacy interest in the car").[1] Hence, the Court concluded that the search of the vehicle did not violate Bennett's Fourth Amendment rights. See United States v. Burnett, 890 F.2d 1233, 1236 (D.C. Cir. 1989) (explaining that a "defendant's constitutional rights are violated 'only when the challenged conduct invaded his legitimate expectation of privacy'") (citation omitted).

Based on the Court's conclusions, the Court indicated it would deny Bennett's motion to suppress physical evidence. But because the Court had lingering questions about the propriety of the procedure Sergeant Cortright used during the search of the vehicle, the Court asked the parties to submit the relevant regulations governing inventory searches. The Court indicated its intention to review the materials to assess whether the search could be sustained on an alternative ground as an inventory search exception to the Fourth Amendment warrant requirement. When the Court requested the relevant regulations, Bennett's counsel also sought permission to submit a supplemental filing on another narrow issue. The defense indicated it would submit case law to support the proposition that Bennett had a legitimate expectation of privacy in the backpack that was found in the stolen Monte Carlo, from which a loaded handgun was recovered. Upon

---

[1] The Court reached this conclusion based upon the facts and circumstances as presented at the hearing and in the parties' filings, as summarized above. The Court therefore does not adopt a bright-line test holding that all unauthorized drivers of rental vehicles lack legitimate privacy interests. Based upon the particular facts of a case, it may be reasonable to conclude that an individual has a legitimate privacy interest in a rental vehicle even though the rental agreement has been breached. See United States v. Smith, 263 F.3d 571 (6th Cir. 2001) (holding that the defendant had a legitimate expectation of privacy in a rental vehicle because his wife, the authorized driver of the vehicle, gave him permission to use the car and because he had called the rental company to reserve the vehicle and had paid for the rental with his credit card); United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) (noting that the government did not "seriously dispute Cooper's subjective expectation of privacy in the rental car" four days after the rental agreement expired where the defendant had previously experienced that he was allowed to return the car after the due date as long as he continued to pay for the car in full).

consideration of the supplemental submissions, the applicable law, and the entire record, the Court concludes that Bennett had no legitimate expectation of privacy in the backpack located in the stolen Monte Carlo; the search of the Monte Carlo, however, apparently was an invalid inventory search that does not fall within an exception to the Fourth Amendment warrant requirement.

Bennett cites four cases to support his argument that he had a separate and legitimate expectation of privacy regarding the backpack. See Bond v. United States, 529 U.S. 334, 337 (2000) (stating that it was "undisputed that petitioner possessed a privacy interest in his bag" located in the overhead storage space of a Greyhound bus while he was a passenger); United States v. Edwards, 242 F.3d 928, 937 (10th Cir. 2001) (holding that the defendant had a legitimate privacy interest in his personal luggage contained within the trunk of his companion's properly rented vehicle); United States v. Infante-Ruiz, 13 F.3d 498, 502 (1st Cir. 1994) (holding that the defendant had a legitimate privacy interest in his briefcase located in the trunk of his companion's rental car); United States v. Buchner, 7 F.3d 1149, 1154 (5th Cir. 1993) (holding that the defendant had a legitimate expectation of privacy with respect to the contents of his suitcase located in his girlfriend's properly rented vehicle). However, these cases are all clearly distinguishable from the facts of the instant case. In all of the cases cited by Bennett, the defendant was or had been a legitimate passenger in a vehicle, with permission to temporarily place his contained belongings in the vehicle. Because those individuals had an expectation of privacy with regard to their contained belongings, and because it was an expectation "that society is prepared to recognize as 'reasonable,'" the Fourth Amendment protected those interests. Rakas, 439 U.S. at 143 (quoting Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J.,

concurring)).

Here, however, Bennett was not a legitimate occupant of the Monte Carlo, and he had no permission to place his belongings in the vehicle. Bennett cites no cases where a defendant with a stolen car was found to have a legitimate privacy interest in containers located in the stolen vehicle. To the contrary, courts have concluded that such an outcome would be untenable and that society is not prepared to recognize such an expectation of privacy as reasonable. As the Fourth Circuit has succinctly stated, "[o]ne who can assert no legitimate claim to the car he was driving cannot reasonably assert an expectation of privacy in a bag found in that automobile. . . . A person who cannot assert a legitimate claim to a vehicle cannot reasonably expect that the vehicle is a private repository for his personal effects, whether or not they are enclosed in some sort of a container . . . ." Wellons, 32 F.3d at 119-20 (quoting United States v. Hargrove, 647 F.2d 411, 413 (4th Cir. 1981)); see also Thomas, 447 F.3d at 1199 n.9 (concluding that because the defendant did not have a legitimate expectation of privacy as an unauthorized driver of a rental car he could not challenge the search of the vehicle, including the search of "a Sprint bag, a small . . . telephone bag," which contained 600 grams of cocaine); United States v. Obregon, 748 F.2d 1371, 1375 (10th Cir. 1984) (holding that the district court was not clearly erroneous in finding that the defendant "did not have a legitimate expectation of privacy in the car he was driving and therefore did not have standing to challenge the stop and later search of the car," which included opening a garment bag and a tape-sealed cardboard box that contained cocaine); United States v. Gordon, 65 F. Supp. 2d 365, 369 (E.D. Va. 1999) (holding that a defendant who rented a vehicle under a false name had no legitimate privacy interest in the vehicle and could not challenge the search of the vehicle or the contents therein, which included a jacket containing

marijuana and a wallet containing a false identification card). Hence, the Court concludes that Bennett did not have a legitimate expectation of privacy regarding the unzipped backpack located in the stolen Monte Carlo.

Because Bennett had no expectation of privacy that society is willing to recognize as reasonable regarding the stolen Monte Carlo or its contents, Bennett's Fourth Amendment rights were not violated by the search of the vehicle. It is therefore unnecessary for the Court to determine whether Sergeant Cortright followed proper inventory search procedures, which is the basis on which the government justifies the search. Nevertheless, at the hearing, the Court concluded that Sergeant Cortright's knowledge of the relevant procedures was not overwhelming or perfectly clear, and the parties were unable to articulate the proper steps that should have been followed. Based on the supplemental submissions, it appears that Sergeant Cortright did not act according to the proper process.

"The Fourth Amendment requires . . . that an inventory search be reasonable and, if a standard procedure for conducting an inventory search is in effect, it must be followed." United States v. Proctor, 489 F.3d 1348, 1355 (D.C. Cir. 2007) (holding that the seizure and search of a vehicle violated the Fourth Amendment where the officers did not follow the relevant procedures for prisoner's property). With its supplemental submissions, the government provided MPD General Order 602.1, which broadly governs "Automobile Searches and Inventories" and describes different procedures based upon how a vehicle was seized, and MPD Special Order 01-05, which outlines procedures for inventorying "Recovered Stolen Vehicles." See MPD General Order 602.1, Automobile Searches and Inventories, Part I.B.2.b. (May 26, 1972); MPD Special Order 01-05, Recovered Stolen Vehicles (March 1, 2001). The government attempts to argue

that Sergeant Cortright's search of the Monte Carlo can be justified either as the seizure of the vehicle as evidence or as an inventory of a recovered stolen vehicle. However, regardless of whether Sergeant Cortright was attempting to follow procedures for vehicles seized as evidence or for recovered stolen vehicles, there is no evidence that Sergeant Cortright took a proper inventory of the items in the vehicle. Both General Order 602.1 and Special Order 01-05 clearly require an officer to complete a PD Form 81 property record listing the contents removed from the vehicle. See General Order 602.1 at Part I.B.6; Special Order 01-05 at Part IV.A.2. Although Sergeant Cortright testified as to what was found in the Monte Carlo and as to where the items were located, he did not testify that any form was completed with this information, and he failed to produce a log of the inventory. Without that critical document, and without any testimony that it was in fact created, the Court cannot conclude that standard procedures were followed and that the search was a proper inventory search.[2]

Because Bennett had no legitimate privacy interest in the stolen Monte Carlo or its contents, his Fourth Amendment rights were not violated by the ensuing search of the vehicle and its contents, and it is therefore **ORDERED** that [10] the motion to suppress physical evidence is **DENIED**.

Dated: May 2, 2008

/s/
JOHN D. BATES
United States District Judge

---

[2] Because Special Order 01-05 is lacking in clarity, the Court also has concerns about other potential procedural violations during the seizure and search of the Monte Carlo. For example, it appears that Enterprise should have been contacted and given the option of retrieving the vehicle at the scene, and there appears to be no procedure authorizing an MPD officer to drive the recovered vehicle to an impound lot instead of using a towing firm. Additionally, the Special Order does not seem to provide a "Hostile Crowd or Inclement Weather" exception similar to the procedures applicable to searches incident to arrests.