UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | Crim. No. 07-336 (JDB) |
| ERRICKSTON BENNETT, : | Sentencing Date: August 28, 2008 |
| Defendant. : | |

**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits its Memorandum in Aid of Sentencing. In support thereof, the United States respectfully states the following:

**Background**

1. The facts of this case pertaining to this plea agreement are set forth in the proffer of evidence signed by defendant Bennett on May 12, 2008, and filed with the Court. We summarize them briefly herein.

2. On September 4, 2001, defendant Bennett was convicted of Carrying a Pistol Without a License, in the District of Columbia Superior Court, Case No. 2001FEL005966.

3. In summary, on November 7, 2007, at approximately 2:35 p.m., Metropolitan Police Department (MPD) Sergeant Timothy Cortright was working in the area of the 1100 block of Queen Street, N.E., in the District of Columbia. While on duty, Sgt. Cortright observed defendant Errickston Bennett, operating a 2007 Chevy Monte Carlo on Mount Olivet Road, N.E., in the District of Columbia. At that time. Sgt. Cortright conducted a record check on the vehicle tag number, and from the record check he learned that the vehicle had been reported stolen by Enterprise Leasing

Corporation, the lawful owner of the Monte Carlo. At that point, Sgt. Cortright called MPD Detective Daniel J. Straub, who had taken Enterprise's stolen auto report, and he provided Sgt. Cortright with defendant Bennett's name, address, and other relevant information regarding the Monte Carlo.

After receiving more information about the vehicle and its possible whereabouts, Sgt. Cortright drove to the 100 block of Queen Street, N.E., in the District of Columbia, which is an area known as the Trinidad neighborhood, and he observed the Monte Carlo parked at the corner of Queen Street. Minutes later, Sgt. Cortright observed defendant Bennett enter the Monte Carlo twice before he apprehended and arrested defendant Bennett for Unauthorized Use of a Vehicle. Sgt. Cortright searched defendant Bennett's person, and located inside defendant Bennett's right front pant's pocket were vehicle keys with a tag bearing the Enterprise name and company logo.

Sgt. Cortright searched the Monte Carlo, and inside of the unlocked, but closed center console was: 1) a large clear plastic ziploc bag containing 24 very large tannish rocks, which field-tested positive for cocaine; 2) a plastic pill container which contained 104 small ziploc bags, each containing a tannish rock, a portion of which tested positive for cocaine; 3) a Canada Dry identification card with defendant Bennett's photo on it; 4) a HID Corporation Prox Card; and 5) a Solbiato clothing store receipt in the amount of $474.82. On the passenger side floorboard of the vehicle was a High Sierra backpack, which contained: 1) an operable, loaded Firestorm .45 caliber semi-automatic pistol with nine rounds of ammunition inside; 2) mail matter with defendant Bennett's name on it, including defendant Bennett's Equifax credit report, and defendant Bennett's child support enforcement paperwork and receipts; 3) a liquor box, which contained a plate, razor blades, several empty ziploc bags that matched the ziplocs in the pill container in the center console,

two cigarette lighters, and a electronic scale; and 4) a cellular phone subscribed to defendant Bennett, and defendant Bennett's cellular phone bill. In the driver's side door pocket there was additional mail matter in the name of Errickston Bennett, including a June 8, 2007, notice letter from Enterprise demanding the return of the Monte Carlo. In the trunk of the vehicle was: 1) mail matter and other documents in defendant Bennett's name; and 2) tickets issued to defendant Bennett's personal vehicle. In the glove compartment of the vehicle was: 1) a registration certificate naming Enterprise Leasing Co. as the registered owner of the Monte Carlo; 2) an Enterprise rental agreement between Enterprise and Errickston Bennett; 3) consumer materials for the Monte Carlo; and 4) mail matter and other documents with defendant Bennett's name on it.

## Statutory Penalties

4.      Pursuant to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii), defendant Bennett faces a sentence of 10 years to life imprisonment, a term of supervised release of not more than 10 years, a fine of not more than $ 4,000,000, and a special assessment of $100. See PSR ¶ 3.

5.      Pursuant to 18 U.S.C. §§ 922 (g)(1) and 924 (a)(2), defendant Bennett faces a maximum sentence of 10 years of imprisonment, a term of supervised release of not more than 3 years, a fine of not more than $250,000, and a special assessment of $100. See PSR ¶ 3.

## Sentencing Guidelines

6.      The Federal Sentencing Guidelines calculation embodied in the Presentence Report places the defendant's base offense level at 30. See PSR ¶ 13. The PSR also allows a two-point increase as a specific offense characteristic for possession of a dangerous weapon. See PSR ¶ 14. The PSR also correctly affords the defendant a two-point reduction in his guidelines calculation for acceptance of responsibility, which diminishes his total offense level to 30. See PSR ¶ 20 and 21.

The PSR calculates the defendant's criminal history score as 2, and the criminal history category as II. See PSR ¶ 25. The total offense level therefore is 30, and the Guidelines range for the defendant is 120 to 135 months of imprisonment. See PSR ¶ 52.

### Sentencing Recommendation

7. The government recommends that the Court sentence defendant Bennett at the low-point of the Guidelines range in this case. The government also recommends a $4,284.55 fine, and a special assessment of $100.

8. When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). See Gall v. United States, 128 S. Ct. 586 (2007). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. §3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

9. In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). Booker, 125 S. Ct. at 756. Nonetheless, the Court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See Gall, at 590 ("As a matter

of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. See Rita v. United States, 127 S. Ct.2456 (2007); see also United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). In addition, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766-67 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

10.    The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in § 3553(a). Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by § 3553(a)(1). The Guidelines themselves thus seek to implement – in a fair and uniform way – the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in Gall. See Gall, at 590.

11.     The government submits that the advisory Guideline calculations set forth in the PSR are accurate. We recommend that this Court impose a sentence at the lowest point of the Guidelines range.

The government submits that this recommendation at the lowest point of the Guidelines range is reasonable, considering, among other things, in this case, defendant Bennett possessed a loaded semi-automatic pistol, which was "cocked" to fire at the time it was seized by the police. Considering the fact that defendant Bennett knew he was not legally entitled to have a gun, the defendant's conduct here is serious. Moreover, in addition to his numerous other convictions and arrests, the defendant possessed 115.2 grams of crack cocaine, which had a street profit margin of almost $16,000. Clearly, the defendant is an armed drug dealer, who has not been adequately deterred from dealing drugs and arming himself with illegal weapons. It is vital that the Court send a message to both the defendant and the community that the illegal possession of guns and selling drugs will not be tolerated.

12.     It should also be noted that defendant Bennett has already received a substantial benefit for his acceptance of responsibility. Specifically, defendant Bennett received a two-point decrease in his offense level under the Guidelines. Accordingly, pursuant to defendant Bennett plea agreement, he has already received all the leniency he should receive. Sentencing defendant Bennett at the lowest point of the Guidelines range would serve the interests of the community, and be consistent with the goals set forth in 18 U.S.C. § 3553.

**CONCLUSION**

WHEREFORE, based upon the above, and the information reflected in the Presentence Report, the United States respectfully recommends that the Court impose a sentence of 120 months.

        Respectfully,

        JEFFREY A. TAYLOR
        UNITED STATES ATTORNEY
        D.C. Bar No. 498610


By:       /s/
        RHONDA L. CAMPBELL
        ASSISTANT UNITED STATES ATTORNEY
        D.C. Bar Number 462402
        United States Attorney's Office
        555 Fourth Street, N.W., Room 4239
        Washington, D.C. 20530
        Phone: (202) 514-9519
        rhonda.campbell@usdoj.gov